**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GETHRO MONDELICE,** | : | |
| **Petitioner** | : | **CASE NO. 3:15-CR-295** |
| **v.** | : | **(JUDGE MANNION)** |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Pending before the court is petitioner Gethro Mondelice's ("Mondelice") counseled Motion to Vacate, Set Aside, or Correct his judgment of conviction imposed on July 3, 2018. (Doc. 101). Mondelice served his 36 month prison sentence and was in the custody of ICE at Essex County Correctional Facility, Newark, New Jersey, serving his term of supervised release when he filed his motion on July 17, 2019. (Doc. 110). After he filed his motion, Mondelice, a lawful permanent resident of the United States but not a citizen, was removed from the United States to Haiti by ICE pursuant to a removal order. Mondelice's instant motion is filed pursuant to 28 U.S.C. §2255 and is based upon ineffective assistance of counsel claims against his two trial counsel. In particular, Mondelice claims that his first trial counsel was ineffective for failing to advise him, prior to his guilty plea, that he would be

1

deported to Haiti based upon the charges to which he was going to plead guilty, and that he would be ineligible to file a request for relief from removal with the Immigration Court. Mondelice claims that his second trial counsel was ineffective for various reasons, including his failure to file a requested appeal of his judgment of sentence alleging that the court erred in denying his two motions *in limine*, his failure to advise him about deportation consequences, and his failure to properly consult with him about filing an appeal. As relief, Mondelice requests the court to vacate his judgment of conviction as to Counts 1-3 and to reinstate his appellate rights so that he can appeal the trial court's rulings regarding the admissibility of a telephone conversation defendant had with a CI who had died and the admissibility of the transcript of the defendant's testimony at his guilty plea withdrawal hearing. Mondelice also requests the court to allow him to withdraw his guilty plea to Count 4.

On September 20, 2019, the government filed a motion for an evidentiary hearing in this case. (Doc. 114). Mondelice did not oppose the motion. The court then scheduled the evidentiary hearing and granted motions to continue the hearing. The court finally scheduled the hearing for April 2, 2020. (Doc. 119). In the meantime, the judge who was assigned this case, the Honorable A. Richard Caputo, passed away prior to the hearing, and this case was re-assigned to the undersigned on March 17, 2020. On

March 31, 2020, this court issued an Order and cancelled the April 2, 2020 hearing since Mondelice was removed from the United States in November 2019, and his counsel was not able to locate him. (Doc. 121). After the court directed counsel to file briefs concerning whether this case should be dismissed for lack of prosecution and responses were filed, on November 3, 2020, the court scheduled the hearing for December 10, 2020. (Doc. 126). The court directed that Mondelice must appear for the hearing by video conference in Haiti.

The evidentiary hearing was conducted on December 10, 2020, and testimony was heard from Mondelice, Ingrid Cronin, first trial counsel, and Matthew Comerford, second trial counsel. At the conclusion of the hearing, the court issued a briefing schedule.

The transcript from the evidentiary hearing was filed on December 15, 2020. (Doc. 130).

After being granted an extension of time, Mondelice filed his brief in support of his motion under 28 U.S.C. §2255, on January 22, 2021. (Doc. 133).

Also, following an extension of time, the government filed its brief in opposition on February 16, 2021. (Doc. 136).

Mondelice has not filed a reply brief and the time to do so has expired.

3

Upon the court's review of the record in this case, Mondelice's §2255 motion, (Doc. 110), the hearing testimony and Exhibits, as well as the briefs of the parties, Mondelice's motion will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND[1]

On December 15, 2015, an Indictment was filed against Mondelice charging him with three counts of Distribution of Cocaine, in violation of 21 U.S.C. §841(a)(1), (Counts 1-3), one count of Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §841(a)(1), (Count 4), and one count of Possession of Firearms in furtherance of Drug Trafficking, in violation of 18 U.S.C. §924(c), (Count 5). (Doc. 1). The Indictment also contained a forfeiture count.

Cronin, an attorney with the Federal Public Defender's Office, was appointed by the court to represent Mondelice.

On April 4, 2016, Mondelice executed a plea agreement in which he agreed to plead guilty to Count 4 of the Indictment, Possession with Intent to

---

[1]Since the complete background of this case is stated in the briefs of the parties, it shall not be fully repeated herein. The procedural and factual background of this case is also detailed in the PSR filed on June 25, 2018. (Doc. 96).

Deliver Cocaine, and Count 5, Possession of a Firearm in Furtherance of a Drug Trafficking Crime. (Doc. 18).

On May 23, 2016, Mondelice pled guilty to Counts 4 and 5. (Doc. 26). Subsequently, on June 20, 2016, Cronin filed a motion to allow Mondelice to withdraw his guilty plea to only Count 5, the 18 U.S.C. §924(c) offense, and a brief in support. (Docs. 27 & 28). On July 20, 2016, Mondelice filed a motion for new counsel. (Doc. 32). The following day, Cronin filed a motion to withdraw as Mondelice's counsel. (Doc. 33).

On July 27, 2016, the court granted Mondelice's motion for new counsel and Cronin's motion to withdraw, and appointed Comerford, pursuant to the Criminal Justice Act, to be Mondelice's new counsel. (Docs. 35 & 36).

On December 1, 2016, the court conducted a hearing on Mondelice's motion to withdraw his guilty plea on Count 5. Mondelice testified at the hearing and made certain admissions about the drug offenses. On December 6, 2016, the court issued an Order and permitted Mondelice to withdraw his guilty plea with respect to only Count 5 since he stated that he was actually innocent of this firearm charge. (Docs. 42 & 43). Mondelice's guilty plea to the Count 4 drug offense (possession with intent to deliver cocaine) remained in effect. Also, Mondelice still faced the drug trafficking charges against him in Counts 1-3.

The court then scheduled a trial regarding the firearm charge pending against Mondelice, Count 5, as well as the three drug trafficking charges, Counts 1-3. However, the trial was continued after Comerford filed pre-trial motions, including a motion *in limine* to preclude the use by the government of a recorded conversation between Mondelice and a deceased CI, and a motion *in limine* to preclude the use of Mondelice's testimony at the hearing to withdraw his guilty plea. (Docs. 67 & 74). The court denied Mondelice's two stated motions.

The trial on the stated charges against Mondelice in Counts 1-3 and 5 commenced on June 5, 2018, and the jury returned a verdict on June 6, 2018. (Doc. 87). In particular, the jury found Mondelice guilty on the drug delivery charges in Counts 1-3, and not guilty on Count 5, the §924(c) charge. As indicated, Mondelice's guilty plea to Count 4 was not withdrawn. The court then directed the Probation Office to prepare a presentence investigation report.

On July 3, 2018, the court sentenced Mondelice to time served (after he served about 35 months in federal detention) on Counts 1-4, to run concurrently, followed by a 3-year term of supervised release. (Doc. 101). However, since the Bureau of Immigration and Customs Enforcement ("ICE") had a detainer lodged against Mondelice to commence removal proceedings

against him after his criminal case was finished, he remained in custody of the government.

Mondelice did not file a direct appeal of his conviction and sentence with the Third Circuit Court of Appeals.

On August 6, 2018, Mondelice was arrested by ICE agents and he was taken to the Essex County Correctional Facility where he was detained.

Mondelice was simultaneously served with a Notice to Appear by ICE commencing removal proceedings against him and charging him as being subject to removal under Section 237(a)(2)(B)(i) of the Immigration and Nationalities Act ("INA"), conviction of a controlled substance offense (other than marijuana possession), and INA Section 237(a)(2)(A)(iii), conviction of an offense relating to the illicit trafficking of a controlled substance. Also, since Mondelice was convicted of drug trafficking offenses, considered aggravated felonies by INA §101(a)(43)(B), he was ineligible for bail during the immigration proceedings under INA §236(c). As such, Mondelice remained in detention under ICE's custody pending his removal proceedings.

On April 30, 2019, Mondelice filed, through counsel, an application with the Executive Office of Immigration Review for relief from removal pursuant to the Convention Against Torture ("CAT"), as well as requests for Asylum and for Withholding of Removal. In his CAT application, Mondelice alleged that he was taken out of Haiti, his country of origin, when he was one year

old, and that if he was returned to Haiti he was in danger of being tortured by agents of the Haitian government. On June 24, 2019, Mondelice's requests for relief from removal were denied by an Immigration Judge and he was ordered removed from the United States to Haiti.

On July 05, 2019, Mondelice filed, *pro se*, an appeal of the Immigration Judge's removal order with the Board of Immigration Appeals ("BIA").

On July 17, 2019, Mondelice, filed, through counsel, his instant motion pursuant to 28 U.S.C. §2255 raising his claims of ineffective assistance of his two trial counsel and seeking to vacate his judgment of conviction and to reinstate his right to appeal. (Doc. 110). Specifically, Mondelice alleged that he was not informed by Cronin at the time he entered his guilty pleas to the drug trafficking offenses and the firearms offense that since he was not a United States citizen, and only a lawful permanent resident, he would be removed from the United States due to his conviction on the offenses. He also alleged that when he moved to withdraw his guilty plea to only the firearms violation, he was not informed by Cronin that the drug trafficking charge was considered an aggravated felony, and would lead to his removal from the United States.

Subsequently, several Orders were issued scheduling an evidentiary hearing regarding the motion to vacate by Judge Caputo but the hearing was repeatedly continued since Mondelice's counsel was not able to locate his

client, who was in ICE's custody. Finally, after believing Mondelice was located, Judge Caputo continued the evidentiary hearing scheduled for October 15, 2019, to December 6, 2019. (Doc. 117).

However, prior to the December 6, 2019 hearing, Mondelice's counsel was informed by Mondelice's mother that Mondelice had been deported to Haiti by ICE. Despite the automatic stay in effect on Mondelice's removal from the United States pending his appeal of the IJ's removal order with the BIA, it was discovered that Mondelice was improperly deported by ICE on September 28, 2019. Consequently, Mondelice's counsel filed a motion on November 27, 2019 for a continuance and Judge Caputo continued the evidentiary hearing for April 2, 2020. (Doc. 119).

The BIA dismissed Mondelice's appeal of his removal order on November 29, 2019, after he was already removed to Haiti.

As indicated above, following Judge Caputo's passing in March 2020, the undersigned was assigned this case.

Ultimately, an evidentiary hearing on Mondelice's §2255 motion was held on December 10, 2020, and Mondelice testified *via* video conference from the United States Embassy in Haiti. Cronin and Comerford also testified remotely by video. The parties then filed their supplemental briefs.

The court now decides whether Cronin and Comerford rendered ineffective assistance of counsel by allegedly failing to advise Mondelice that

he would be removed from the United States if he pled guilty and, by failing to file a direct appeal with respect to his conviction after trial and by allegedly failing to explain to him appellate issues. The court will also decide whether Mondelice is entitled to reinstatement of his direct appeal rights. Mondelice also requests the court to consider whether he should be permitted to withdraw his guilty plea to Count 4 of the Indictment even though he only moved to withdraw his plea to Count 5, based on his allegation that Cronin mistakenly advised him that the charge in Count 4 was not the type of offense that would result in his mandatory removal from the United States.

## II.    STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice

thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D. Pa. June 21, 2010) (citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D. Pa. Jan. 7, 2008) (quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D. D.C. 2013) (citation omitted). Fraction's instant claims fall within the purview of §2255 since they challenge the validity of his sentence. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on

11

direct appeal.") (citing <u>Massaro v. U.S.</u>, 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

Additionally, "Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing", "[r]ather, Section 2255 is implicated only when the alleged error raises 'a fundamental defect which inherently results in a complete miscarriage of justice.'" <u>Williams v. United States</u>, 2016 WL 6892375, *2 (M.D. Pa. Nov. 22, 2016) (internal citations omitted).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." <u>U.S. Const. amend. VI</u>. The U.S. Supreme Court in <u>Strickland v. Washington, 466 U.S. 668 (1984)</u> established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," <u>id.</u>, 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u>, 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, *cf.* United States v. Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of

counsel claim." <u>Ayers</u>, 938 F.Supp.2d at 113 (citing <u>Strickland</u>, 466 U.S. at 700).

## III.   DISCUSSION

This court has jurisdiction over Mondelice's motion under §2255 pursuant to 28 U.S.C. §§1331 and 2241.

The court now considers the evidence and the testimony from the witnesses at the hearing, as well as the Exhibits and the briefs, in deciding whether Mondelice has met his burden with respect to his claims of ineffective assistance against both of his trial counsel, Cronin and Comerford.

Initially, it is of no moment that Mondelice did not file a direct appeal regarding his instant claims and they are not defaulted. *See* <u>Battaglini v. United States</u>, 198 F.Supp.3d 465, 470 (E.D. Pa. 2016) ("Ineffective assistance of counsel that rises to the level of a Sixth Amendment violation constitutes cause to excuse a procedural default.") (citation omitted).

The court analyzes Mondelice's claims of ineffective assistance of counsel using the two-pronged approach prescribed in *Strickland*.

First, the court will discuss Mondelice's claim that Comerford was ineffective for failing to file a notice of appeal of his judgment of conviction as he allegedly requested him to do and, then whether Comerford failed to

14

consult with him and explain his appealable issues following his trial and the likely outcome of such an appeal.

In United States v. Doss, 2017 WL 1709397, *3 (M.D. Pa. May 3, 2017), certificate of appealability denied, 2017 WL 5952261 (3d Cir. Aug. 25, 2017), the court addressed the type of *Strickland* analysis which the court must generally conduct when a defendant raises an ineffective assistance claim based upon counsel's failure to file an appeal pursuant to Roe v. Flores-Ortega, 528 U.S. 470 (2000). *See* Harrington v. Gillis, 456 F.3d 118, 125 (3d Cir. 2006). The Doss Court, *id.*, then stated:

> In *Flores-Ortega*, the Supreme Court held that defense counsel must consult with their client about an appeal in situations where a rational defendant would want to appeal or where the defendant actually expressed interest in appealing. Flores-Ortega, 528 U.S. at 480. The Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478.
>
> The first step in the *Flores-Ortega* analysis is to determine whether counsel consulted with his client about an appeal. Harrington, 456 F.3d at 125. When counsel consults with the defendant, failure to follow the defendant's express instructions to file an appeal is professionally unreasonable and satisfies the first *Strickland* prong. *See id.* (quoting Flores-Ortega, 528 U.S. at 478). When counsel does not consult with the defendant, representation will be deemed deficient if a rational defendant would want to appeal or if the defendant actually expressed interest in appealing. Flores-Ortega, 528 U.S. at 480.
>
> To satisfy the second *Strickland* prong, a defendant must show a reasonable probability that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. Factors relevant to this inquiry include

whether the defendant pled guilty, whether he received a bargained-for sentence, and whether he waived some appellate rights. *Id.* at 480. Failure to appeal despite the defendant's express instructions to do so is presumptively prejudicial under *Flores-Ortega*. *Id.* at 484.

Since Mondelice went to trial on Counts 1-3 and 5, there is no issue regarding any waiver of his appellate rights. As such, the court must engage in a *Flores-Ortega* presumption of prejudice analysis. Thus, there is a presumption of prejudice under the second *Strickland* prong if counsel fails to file an appeal when the defendant expressly instructs him to do so. *See* Flores-Ortega, 528 U.S. at 484.

In United States v. Murphy, 2017 WL 3537394 (M.D.Pa. Aug. 17, 2017), defendant Murphy filed a §2255 motion claiming that his counsel was ineffective for failure to file his requested appeal of his sentence with respect to his classification as a career offender. As Mondelice requests in the present case, Murphy requested, in part, the reinstatement of his right to appeal. Murphy claimed that at the conclusion of sentencing he requested his counsel to file an appeal regarding his career offender classification and that counsel advised him that he would file the appeal. However, Murphy's counsel failed to file the appeal.

The court in Murphy, 2017 WL 3537394, *3, addressed the ineffective assistance of counsel claim of its defendant under Flores-Ortega, 528 U.S. at 478, stating that "the Supreme Court did clarify that where a criminal

16

defendant expresses a wish to appeal, his or her counsel is professionally unreasonable if he or she fails to appeal", and that "the *Flores-Ortega* Court did not require, for grant of habeas corpus, a showing of meritoriousness regarding an appeal not taken because of ineffective assistance of counsel." (citing Velazquez v. Grace, 277 Fed.Appx. 258, 260 (3d Cir. 2008)). The court in Murphy, *id.*, then considered whether its defendant was entitled to an evidentiary hearing stating that "defendant would have to prove that he asked his lawyer to file an appeal and his lawyer agreed to do so but did not" and, that "[a]s a practical matter this would require an evidentiary hearing." The court in Murphy*, id.*, then addressed the case of Solis v. United States, 252 F.3d 289 (3d Cir. 2001), stating that Solis claimed the district court erred by denying him an evidentiary hearing since he alleged that after his sentencing he requested his counsel to file an appeal but counsel failed to file one. The district court in Solis denied defendant's §2255 motion without a hearing. The Third Circuit in Solis, *id.* at 294, held that a hearing was required in that case explaining, "Solis claims that he directed his attorney to file an appeal, but that his attorney failed to comply. On its face, this creates a question of fact whether Solis directed his attorney to file an appeal. If he did, then Solis's Sixth Amendment right to counsel was violated by his counsel's failure to act." Further, the remedy for a violation of the right to effective assistance of counsel regarding the failure to file an appeal when

17

defendant directs him to file one is the reinstatement of the defendant's appellate rights. <u>Solis</u>, 252 F.3d at 294–95.

The court now addresses the testimonies of Mondelice and Comerford.

Mondelice states that since he was convicted of Counts 1-3 and 5 after a trial and "during which the court denied two significant motions *in limine* filed by the defense [*i.e.*, Comerford] seeking to exclude highly prejudicial evidence", Comerford had a duty to consult with him about an appeal and about issues he could raise as well as the possible merits of the issues. In particular, the two issues Mondelice claims that he would have appealed were the court's trial rulings allowing into evidence the recorded telephone conversation between Mondelice and a deceased confidential informant, and allowing into evidence Mondelice's testimony from the hearing on his motion to withdraw his guilty plea in which he made admissions regarding the drug charges. Comerford filed the motions *in limine* to preclude both pieces of evidence and the court denied his motions. Comerford also objected to the admissibility of the evidence at trial but he was overruled. Mondelice states that he can satisfy the prejudice requirement of his ineffective claims since there are "substantial reasons to believe that he would have appealed" the stated two issues. (Doc. 133 at 15) (citing <u>Flores-Ortega</u>, 528 U.S. at 486).

At the hearing, Mondelice testified that at the conclusion of the trial he told Comerford that "I wanted my appeal agreement [sic] back, and then

18

Comerford] specifically said, why, you got what you wanted, you got the guns [charge acquittal] and [only convicted on] the drugs because that was his whole focus." (Doc. 130 at 33). After his sentencing, Mondelice stated that he had the following conversation with Comerford about an appeal when he was in the holding cell: "that's when [Comerford] was, like, why [file an appeal], and then he was, like, let's think about it, you have 30 days, you got 30 days, and then we'll figure it out, but you got what you wanted [i.e., acquittal on Count 5 the 924(c) charge], you know what I'm saying. You know, there's really nothing much more [I] can do." (Id.).

Mondelice further testified that his conversation with Comerford after his sentencing continued and that Comerford told him he has 30 days to appeal but that he got what he wanted, the acquittal on the firearm charge. Mondelice testified, (Id. at 35), that nonetheless,

> it's still not sitting right with me, you know what I mean, like, I understand what you're saying and everything like that. [Comerford is], like, don't worry about it, you will get the bond [i.e., the release from ICE custody on bond from the Immigration Court pending his removal proceedings]. [Comerford to Mondelice] This was the biggest part, you got the guns [charge not guilty] and the no violence you only got [convicted of a] small [amount of drugs]--I'm, like, I don't know, I think I want to appeal it, just to see if something more --because it didn't feel right with me. You know what I mean? I'm like, no, we got to appeal this because I just found out that she [the CI] passed away. I didn't really want to do the drug stuff. But like I said, I told [Comerford] I wanted to appeal it, and he said, listen, you just got this verdict, you

got 30 days to think about it, and we'll get back to this. I was, like, all right."[2]

After his sentencing, Mondelice stated that he attempted to contact Comerford by telephoning him from the Lackawanna County Prison for thirty days following his sentencing, but he indicated that Comerford did not answer his phone. Thus, Mondelice did not see Comerford after his sentencing and he did not speak with Comerford again during this 30-day time period.

Eventually, Mondelice was transferred by ICE to the Essex CCF in New Jersey and he spoke to Comerford after the appeal time had lapsed. Mondelice testified that he told Comerford that ICE advised him that his drug convictions were considered aggravated felonies for removal purposes and that he was "mandatory deportation because of the drugs alone." Mondelice claims that Comerford "told me that [his convictions] should not have been aggravated felony", and Comerford told him that "he was baffled" and "that's what made me mad." (Id. at 36-37). Mondelice also explained that by the time ICE took him to New Jersey it was too late to file a *pro se* appeal.

---

[2]The court notes that the correct time to file a notice of appeal is 14 days after the J&C is filed. *See* Fed.R.App.P. 4.

Comerford testified that he did not remember having a conversation with Mondelice immediately following the sentencing hearing, but he did recall a meeting at the Lackawanna County Prison after sentencing. (Doc. 130, p. 78). Regarding whether they discussed appellate rights at the meeting, Comerford stated:

> Appellate rights weren't discussed. [Mondelice] never asked me to file an appeal, so I didn't go into detail with respect to potential issues on appeal or anything like that.  Like I said, you know, the strategy that we talked about was successful, and at that point it was to minimize any future exposure to jail time. That had been successful. He was read his rights on appeal after sentencing. I don't know if it went any further than that, but he certainly didn't request of me to file an appeal." (Doc. 130, p. 78).

As to whether Mondelice had any appeal issues to raise, Comerford testified that he did not specifically recall the two motions *in limine* that he filed and he only had a vague recollection regarding the issues raised in them. Nor did Comerford specifically recall the court's rulings on his motions. Notably, Comerford admitted that after trial, he did not have a conversation with Mondelice with respect to potential appellate issues, including the court's two stated evidentiary rulings. (Doc. 130, p. 78-79). Comerford later explained that "I don't recall specifically recall discussing [appellate issues] with [Mondelice]. I'm not saying that I didn't. I'm saying customarily I would discuss some of the appellate rights with him. Do I have a specific recollection in this case? I do not." (Id. at 84).

21

Mondelice  contends that Comerford was ineffective by failing to file an appeal after he told him to and, by failing to properly consult with him on his potential appeal issues and whether he should file an appeal.

No doubt that "[i]f a defendant asks his attorney to file an appeal and his attorney fails to do so, the attorney's performance is ineffective under Strickland." U.S. v. Purcell, 667 F.Supp.2d 498, 514 (E.D. Pa. 2009). Here, the testimony is disputed as to whether Mondelice expressly asked Comerford to file an appeal for him after his sentence. This is a case where the testimonies of both Mondelice and Comerford cannot be true. The witnesses contradict each other on the key issue of whether Mondelice directed his counsel to file a notice of appeal after his sentencing. It is the court's role to judge the credibility of the witnesses in an evidentiary hearing held on a §2255 motion. *See* Purcell, *supra*.

 In considering the above background, the court finds Comerford's unwavering testimony that following his sentence, "[Mondelice] never asked me to file an appeal", more credible since it was consistent with their trial strategy of obtaining an acquittal on the firearm charge to reduce prison time. Since their strategy was successful, it is more believable that Mondelice did not explicitly direct Comerford to file an appeal. Mondelice's testimony regarding this issue was less credible. Thus, the court finds the testimony of

Comerford to be credible, and finds that Mondelice did not, at any time, direct his counsel to file a notice of appeal regarding his conviction and sentence.

"Where a defendant does not expressly ask counsel to file an appeal, courts engage in a different analysis." *Id.*

> Specifically, a court must determine whether counsel breached a constitutional duty to consult with the defendant regarding appeal." A duty to consult with the defendant regarding appeal arises in two situations: (1) when there is reason to think ... that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) [when there is reason to think] that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* (internal quotations and citations omitted). *See also* Battaglini, 198 F.Supp.3d at 472 ("the Supreme Court directed reviewing courts to conduct a 'circumstance-specific reasonableness inquiry' regarding counsel's failure to file a notice of appeal whenever the client did not express a desire to appeal.") (citation omitted).

> Moreover,

> [t]he consultation itself must not be deficient. Indeed, "an attorney may not speak cursorily with a client about an appeal and call it a 'consultation.'" For purposes of applying the Strickland standard in the notice of appeal context, Flores–Ortega defines consulting as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."

Purcell, 667 F.Supp.2d at 514 (internal citations omitted).

23

Mondelice asserts that even if the court finds it more credible that he did not expressly ask Comerford to file an appeal, "it is clear that Attorney Comerford did not 'advise' [him] concerning the merits of an appeal", and that "[t]he two evidentiary issues presented at the trial, [and raised prior to trial in his motions *in limine*] would produce interest in an appeal in a rational defendant." He states that he has shown "the likelihood that the circumstances of the facts and procedure of the case would produce an interest in an appeal" based on the two evidentiary issues he raised in his pre-trial motions and at trial. As such, he states that is a sufficient showing under <u>Flores-Ortega</u> "to impose a duty upon [Comerford] to advise [him] about an appeal" and about his potential appeal issues even if the court finds that he did not expressly request Comerford to file a notice of appeal.

In the instant case, Comerford had a duty after sentencing to consult further with Mondelice regarding whether he wanted to file an appeal and to "advise the defendant of the advantages and disadvantages of taking an appeal", since, based on Mondelice's testimony, he "reasonably demonstrated to counsel that he was interested in appealing." *Id.* In fact, Comerford repeatedly told Mondelice you have "30 days" to consider an appeal but Comerford made insufficient efforts to follow this matter up with his client after his sentencing. Even though Comerford testified that he customarily advises his client about an appeal and whether there were any

24

bases to file an appeal, he could not specifically recall in Mondelice's case if he discussed an appeal with him and whether the defendant had any appellate issues. (Doc. 130 at 83-84). Comerford's uncertain testimony coupled with Mondelice's clear testimony that Comerford failed to consult with him about an appeal, (Doc. 130 at 33-39), leads the court to conclude that Comerford was ineffective in this respect. In fact, when Comerford spoke to Mondelice after his sentencing when he was at Lackawanna County Prison, Comerford admitted that "[a]ppellate rights weren't discussed. He never asked me to file an appeal, so I didn't go into detail with respect to potential issues on appeal or anything like that." (Doc. 130 at 78).

Here, based on the evidence detailed above, the court finds that Comerford's performance did not meet the objectively reasonable standard with respect to his duty to consult with Mondelice about an appeal and with respect to his duty to advise Mondelice of the advantages and potential issues of an appeal and the likelihood of success on those issues. *See* Battaglini, 198 F.Supp.3d at 473 (holding that the consultation itself may be deficient and that "consistent with Strickland, the advice an attorney dispenses during a consultation about filing an appeal must meet an 'objective standard of reasonableness.'"). As such, Comerford was ineffective in this respect.

As to the prejudice prong, based on the totality of the circumstances of this case detailed above, Mondelice has met his burden and "demonstrate[d] that there is a reasonable probability that, but for counsel's [ineffective assistance], he would have timely appealed." Battaglini, 198 F.Supp.3d at 474 (citation omitted). There was sufficient "evidence that there were nonfrivolous grounds for appeal." *Id.* "[The court] should not inquire into the merit of a prospective appeal," since "loss of a requested direct appeal is prejudice enough." *Id.* Therefore, the court finds that Mondelice was prejudiced by Comerford's failure to properly consult with him regarding whether he should file an appeal after his sentencing. *See* Battaglini, 198 F.Supp.3d at 474-75. In particular, Comerford's ineffectiveness deprived Mondelice of his right to file an appeal regarding his conviction at trial on Counts 1-3. Further, counsel's ineffective assistance still prejudiced Mondelice despite that fact that the court advised him at the sentencing hearing that he could appeal his sentence by filing a notice of appeal within fourteen days from the date of entry of the judgment. "[Such an] argument has been squarely rejected by the Third Circuit, because it 'conflates the sentencing court's obligation, under Fed.R.Crim.Pro. 32(j), to inform the defendant of his right to appeal and an attorney's responsibility, under the

Sixth Amendment, to provide effective assistance in the initiation of his client's appeal.'" *Id.* at 475 (citation omitted).

Thus, the court finds merit to Mondelice's stated claim in his §2255 motion and will grant his request to reinstate his appellate rights only to file a notice of appeal, *nunc pro tunc,* with respect to his conviction on Counts 1-3 and, to raise his two evidentiary issues with respect to the admissibility at trial of the recorded telephone conversation he had with the deceased CI and of his testimony at his guilty plea hearing. *See* Solis, 252 F.3d at 294-95 (finding that if the court concludes that trial counsel's ineffectiveness deprived defendant of the right to file an appeal, defendant is entitled to a "*nunc pro tunc* direct appeal.").

The second issue which Mondelice claims his trial counsel was ineffective involves the alleged failure to properly advise him as to whether he would be subject to deportation if he pled guilty and as to which charges would subject him to deportation. Mondelice argues that the erroneous information his first trial counsel Cronin gave him about which charges would subject him to deportation rendered his plea involuntary and rendered his counsel ineffective. Mondelice also contends that Cronin should have moved to withdraw his guilty plea to both Counts 4 and 5, and not to just Count 5. As relief for this claim, Mondelice seeks the court to allow him to withdraw

his guilty plea to the Count 4 drug charge, namely, Possession with Intent to Distribute Cocaine. Mondelice also claims that Comerford gave him faulty trial advice to admit the drug distribution charges in Counts 1-3, and only challenge the gun charge in Count 5, allegedly stating that the drug charges alone may not be grounds for his removal. Mondelice also claims that Comerford led him to believe that if he was acquitted at trial on the gun charge and only convicted of the drug charges, he would be eligible for bond pending his removal proceedings by ICE.

"The Third Circuit has held that 'a defendant has the right to make a reasonably informed decision whether to accept a plea offer' and that '[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'" U.S. v. Purcell, 667 F.Supp.2d 498, 510 (E.D. Pa. 2009) (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir.1992). No doubt that effective assistance of counsel is required for a knowing and intelligent guilty plea. *See* United States v. Arteca, 411 F.3d 315, 320 (2d Cir.2005) ("Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty.") (citations omitted). Further, counsel is required to advise a defendant who is not a United States citizen

of the deportation consequences of his guilty plea. *See* Padilla v. Kentucky, 559 U.S. 356, 374 (2010) ("[C]ounsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less."). Thus, "when the deportation consequence is truly clear, as it was in [Padilla's case because he had committed a removable offense], the duty to give correct advice is equally clear." *Id.* at 369. *See also* U.S. v. Fazio, 795 F.3d 421, 427 (3d Cir. 2015). However, Padilla does not require that a lawyer tell a defendant "'unequivocally' that he would '*certainly'* be removed," but rather requires defense counsel to "warn their clients of the 'risk of deportation,' not predict with certainty whether removal will happen." Thai v. United States, 813 Fed.Appx. 73, 74 (3d Cir. 2020) (citation omitted). Thus, "Padilla instructs defense lawyers to warn their clients of the risk of removal, not to predict actual removal." *Id.*

Here, Cronin properly advised Mondelice regarding his removability from the United States if he pled guilty, and she properly advised Mondelice that Count 4 and Count 5 were each charges that would definitely lead to his removal from the United States. In fact, Mondelice admitted that he discussed the deportation consequences of pleading guilty with Cronin and she told him before he signed the plea agreement that his removal was

"automatic" based on his charges and that he "will be deported." (Doc. 130 at 44-45). Mondelice testified that he agreed to the plea deal because Cronin advised him that since he would be deported for a conviction on his charges, he should take the deal to avoid serving a possible lengthy prison term if he went to trial on all charges and then get deported anyway after his sentence. Mondelice testified that Cronin did not specifically tell him that the drug possession with intent to deliver charge (Count 4) alone was enough to have him deported as an aggravated felon, and stated that "we never talked about the drug charge alone." As such, Mondelice alleges that Cronin's advice was that only the gun charge and drug charge in Counts 4 and 5, together, would result in his deportation. Mondelice stated that he only knew that the gun charge "was guaranteed deportation for [him]." He also admitted that he understood that "it was a possibility" for him to be deported for the drug charge. Mondelice also stated that Comerford advised him that if he was not convicted on the gun charge, there was a possibility he would be eligible for bond from the Immigration Court and there was a possibility he would not get deported only on the drug charges since he had a small amount of drugs and no guns and no violence was involved. (Doc. 130 at 60-61).

Mondelice also testified that he did not recall Cronin filing his motion to withdraw his guilty plea and that he did not recall if he told her to request the

withdrawal to both charges, Counts 4 and 5. Further, he only "presume[]s" he told her both charges. (Doc. 130 at 59).

As Mondelice admits in his brief, (Doc. 133 at 24-25), the facts of his case are nearly identical to the facts in the case of United States v. Fazio, 795 F.3d 421 (3rd Cir. 2015). In Fazio, the Third Circuit rejected the defendant's claim he raised in his Section 2255 motion alleging that his trial counsel who represented him at his guilty plea to a drug trafficking charge was ineffective for advising defendant, who was a lawful permanent resident of the United States, that there was a possibility he would not be deported despite the drug trafficking conviction which would result in almost certain deportation. As Mondelice now recognizes, a drug trafficking offense, at issue in Fazio and in his case, is considered an aggravated felony which subjects the defendant to mandatory removal from the United States. *See* Fazio, 795 F.3d at 427-28 ("Fazio was entitled to be 'advised ... that his conviction for drug distribution made him subject to automatic deportation.'") (quoting Padilla, 559 U.S. at 360).

First, the court accepts and finds more credible the testimonies of Cronin and Comerford that they specifically advised Mondelice that he would undoubtedly be subject to deportation based only on the drug charge in Count 4. Mondelice's testimony that neither counsel advised him of this is simply not credible. Cronin was a very experienced FPD who appeared over

many years before this court and represented numerous other defendants who were not US citizens, and as in the instant case, in those other cases Cronin was well aware of the deportation implications of a defendant who pled guilty to a drug trafficking offense. In fact, in the present case, Cronin testified that she "definitely discussed [the immigration consequences]" of Mondelice's charges and if he pled guilty to Counts 4 and 5, and that it would be automatic, and not only a possibility, that he would be deported if he was convicted of the charges. Cronin did not tell Mondelice at any time that he would be deported if he was convicted of the gun charge but not necessarily of the drug charge. Cronin testified that this issue came up frequently in her practice and that she gave the same advice each and every time. (Doc. 130 at 64). In fact, Cronin stated in no uncertain terms that deportation was automatic with respect to a drug conviction under 841 (Count 4). Over her years as a FPD she stated that she frequently had to advise clients about the immigration consequences when they were faced with drug charges and gun charges under 924(c), "deportation was a consequence." Cronin also told Mondelice that whether he went to trial on all the charges or pled guilty to Counts 4 and 5, if convicted he was going to be deported so the goal was to sign the plea agreement so he would have to serve less prison time before he was deported. Cronin also stated that Mondelice only asked her to file a motion to withdraw his plea to the gun charge and that he said, "I want to

32

keep my plea to delivery but not to the gun charge, if I am going to be deported I might as well … see if I can get less time in jail before I'm deported." (Id. at 64-66). Mondelice did not instruct Cronin to file the motion due to a concern about deportation but only about serving less time in prison before he was deported. As such, Mondelice was well aware when he asked Cronin to file the motion that he was going to be deported based on the drug charge to which he pled guilty. Nor did Cronin ever differentiate between the drug charge and the gun charge, and did not tell Mondelice (or any other such defendant) that he would be deported for the gun charge but might not be deported for the drug charge. (Doc. 130 at 63-69).

Thus, Cronin was emphatic that she did indeed advise Mondelice, as she advised all of her other non-citizen defendants, prior to his signing of the plea agreement that he would get deported if he pled guilty based on his charges. Specifically, Cronin did not advise Mondelice that only the drug charge and 924(c) charge together would result in his deportation, as he testified she did. Cronin stated that when Mondelice asked to file the motion to withdraw his plea to the 924(c) charge, he understood that he would be deported based on the drug charge alone. Cronin was much too experienced to make such a blatant erroneous statement regarding the law as Mondelice alleges she made. Cronin reiterated that Mondelice acknowledged that he would get deported when he signed the plea agreement, and that he knew

33

he would get deported. In fact, she referred to paragraph 27 of the plea agreement Mondelice signed, (Doc. 18 at 20), entitled "Deportation/Removal from the United States", which clearly stated that his deportation was a possible consequence of his plea. In particular, the Agreement stated:

> The defendant understands that, if defendant is not a United States citizen, deportation/removal from the United States is a possible consequence of this plea. The defendant further agrees that this matter has been discussed with counsel, who has explained the immigration consequences of this plea. Defendant still desires to enter into this plea after having been so advised.

There is also another document, not mentioned by the defendant, which reflected that by pleading guilty, Mondelice may be deported due to his conviction. The Defendant's Acknowledgement of Rights Waived by Guilty Plea form, which Mondelice signed, (Doc. 23 at 2), stated: "I understand that if I am not a citizen that deportation may be a possible consequence of a conviction."

Additionally, Mondelice admits that similar to the Fazio case, (Doc. 133 at 25-26), the court told him during the colloquy at his May 23, 2026 guilty plea hearing with respect to Counts 4 and 5 that he could be removed from the United States as a result of his conviction. Specifically, the court explained to Mondelice that by pleading guilty to charges that were felonies he may be deprived of valuable civil rights and, significantly, the court noted that "there's, also, the prospect in your case that you may well be removed from the United States because you're not a citizen." (Doc. 26 at 5).

34

Mondelice admitted, under oath, to the court that he understood those things. (Id.). Mondelice also admitted that he had an opportunity to read and discuss the plea agreement with Cronin before he signed it, and that he understood its terms. (Id. at 4).

Also, when the government summarized for the court the plea agreement which Mondelice signed, it referenced the court's discussion of the deportation issue defendant was faced with, and it stated, (Id. at 11-12), as follows:

> The Defendant understands that if the Defendant is not a citizen of the United States, deportation or removal from the United States is a possible consequence of this plea.
>
> The Defendant further agrees that this matter has been discussed with counsel who has explained the immigration consequences of this plea. The Defendant still desires to enter into this plea, after having so been advised, and it's signed by Mr. Mondelice, Ms. Cronin and myself at the end of the document.

> After the court completed its thorough colloquy, (Id. at 16), it stated:

> Mr. Mondelice is fully competent and capable of entering an informed plea, he's aware of the nature of the charges and the consequences of the plea. The plea of guilty is both knowing and voluntary and is supported by an independent basis in fact which contains each of the essential elements of these offenses. I, therefore, accept the plea and the Defendant Mr. Mondelice is now adjudged guilty of the offenses charged in Count 4 and Count 5 of the indictment.

> This court also finds that after the court allowed Mondelice to withdraw

his guilty plea as to only Count 5, and prior to his trial on Counts 1-3 and 5,

35

Comerford properly advised Mondelice of the fact that he would be deported based on the drug charges alone. Comerford also stated that Mondelice was advised he would be deported based on the drug charge, and tried to use this fact in his negotiations with the government in his attempt to get it to dismiss the Section 924(c) charge. (Doc. 130 at 70-73). The court finds that Comerford did not advise Mondelice, as Mondelice testified, that although the drug trafficking offenses rendered him removable, since they involved only small amounts of drugs and in light of his long residence in the United States, he still may be able to remain in the country. Comerford testified that when he represented Mondelice at his hearing to withdraw his plea to Count 5, Mondelice did not ever ask him to amend the motion to include the Count 4 drug charge, or to move separately to withdraw this charge. Indeed, the court allowed Mondelice to withdraw his guilty plea to the Section 924(c) charge since it found that his claim of actual innocence to this charge was credible. (Doc. 42 at 4-6). Comerford also explained that their strategy was to take the gun charge to trial and admit the drug delivery charges in Counts 1-3, and try to get an acquittal on the gun charge so that he would be facing a much shorter prison sentence, and possible time served. (Doc. 130 at 70-73).

Comerford also discussed the immigration consequences related to Mondelice's case with him throughout his representation and stated:

[the immigration consequences] were discussed throughout my representation of him. He was told he was going to be deported, you know. In fact, you know, we tried to use it in our negotiation strategy with respect to the United States Attorney's Office, …. Because at that point he had several years in [prison], we knew he was subject to deportation, and, you know, I was trying to impress upon [the government] this guy will be deported, why are you pushing the 924(c). That was consistently discussed with Mr. Mondelice. He was aware that the drug charges would get him deported. (Doc. 130 at 73).

On cross-exam, Comerford repeated that he "told [Mondelice] definitively he would be deported based on the drug charges", and he was adamant that Mondelice was aware he would be deported regardless of the outcome on the gun charge. (Doc. 130 at 76).

Comerford's testimony was consistent with the undisputed trial strategy, upon which he and Mondelice agreed, namely, that they would try and get an acquittal of the gun charge (Count 5) and admit to the drug charges (Counts 1-3) so that Mondelice would receive a shorter prison sentence prior to his removal from the United States. In fact, their trial strategy was successful since the jury found Mondelice not guilty of the gun charge, Count 5, (which carried an automatic 5-year sentence) and convicted him only of the drug charges in Counts 1-3, and since he then received a sentence of time served with no additional prison time on the charges. Further during his testimony at the December 10, 2020 hearing, Mondelice admitted that he sold drugs. (Doc. 130 at 50-52, 55-57).

37

The court finds that Comerford provided proper representation to Mondelice regarding his advice as to the deportation consequences of his charges and formulated a viable trial strategy to limit his exposure to prison time (that was successful) based on his knowledge that Mondelice would be deported for the drug charges.

Moreover, in <u>Fazio</u>, 795 F.3d at 428, the Third Circuit held that, regardless of the alleged improper advice provided by his plea counsel, who "stated that it would be more likely than not that Fazio could remain in the United States", the defendant had received sufficient information in his plea agreement and from the district court at the time of his guilty plea to understand that the conviction would lead to his automatic deportation. In the instant case, similar to <u>Fazio</u>, Mondelice was advised in the plea agreement and at his guilty plea hearing, by both the government and the court, that "he may well be removed from the United States because [he was] not a citizen." The court finds no merit to Mondelice's attempt to distinguish <u>Fazio</u> from his case by pointing out that in his case, there was allegedly no mention of his automatic or definite removal, since Cronin testified that she clearly told Mondelice, in no uncertain terms, that he would definitely get deported based on his charges, if convicted. Cronin, who is now retired, has no motive to testify falsely. Mondelice, on the other hand, has a substantial and obvious motive to testify less then truthfully. Comerford also advised Mondelice that

38

he would definitely be deported due to the drug charges despite any acquittal on the gun charge.

Since the court finds that Mondelice did to meet his burden to satisfy the first prong of <u>Strickland</u> by showing that either of his trial counsel were ineffective for failing to inform him of the immigration consequences of his case at any stage of their representation, the court need not consider the second prong, *i.e.*, whether he was prejudiced by the alleged failure of counsel. Thus, the court will deny Mondelice's Section 2255 motion with respect to his second ineffective assistance of counsel claim and it will deny his request to vacate his conviction with respect to the drug possession with intent to deliver charge in Count 4 of the Indictment.

Finally, because the court is only reinstating Mondelice's appeal rights with respect to his ability to file a notice of appeal *nunc pro tunc* with the Third Circuit to challenge his conviction at trial on Counts 1-3 based on the two stated evidentiary issues he raised in his motions *in limine*, and is not vacating his convictions on any Counts, *i.e.*, Counts 1-4, it can make no determination as to Mondelice's admissibility back into the United States.[3]

---

[3]In any event, this court has no jurisdiction under the REAL ID Act of 2005, 8 U.S.C. §1252, over a non-citizen alien's challenge to a final removal order. *See* <u>Khouzam v. Attorney General of U.S.</u>, 549 F.3d 235 (3d Cir. 2008). Further, regardless of the outcome of any *nunc pro tunc* appeal by Mondelice on Counts 1-3, he would appear to still be removable based on

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because even if Mondelice has shown the denial of a constitutional right, jurists of reason would not disagree with this court's resolution of his claims.

## V.    CONCLUSION

Based on the foregoing, the court finds Mondelice has met his burden to show that Comerford was ineffective for failing to properly consult with him about filing a notice of appeal after his trial. The court finds Mondelice did not

---

his Count 4 drug conviction which the court is not vacating and will not be the subject of any appeal he may file.

meet his burden with respect to his other claims and did not show that Cronin and Comerford were ineffective or deficient in any way regarding these claims. Therefore, the court **GRANTS IN PART** and **DENIES IN PART** Mondelice's §2255 Motion, as discussed above. **(Doc. 110)**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 3, 2021**
15-295-01

41